HELEN FARRAR, Appellant, v. T. S. FARRAR, Defendant, FRED STUART, Appellant.

**Attorney and Client:** ALIMONY. Defendant was desirous of procuring a divorce from his wife (an appellant herein), but was advised by appellant S. an attorney, that he could not get it. He then induced his wife to apply for a divorce, on the promise that she should have one thousand dollars alimony. Appellant S. was acting as her attorney, but was to be paid for his services by defendant A divorce was granted appellant, and one thousand dollars alimony was awarded her as agreed upon. On the same day appellant S. procured a marriage license for defendant and one M. F., who was to pay the alimony, which was paid, when the marriage was consummated, by M. F. indorsing a draft for the amount, and turning it over to appellant S. *Held*, that appellant S. was liable to appellant for the whole amount of the one thousand dollars, less court costs, and could not pay any part of it on defendant's order, or retain any part as attorney's fees. None of such money can be diverted to the use of the husband, or the payment of his creditors, although he has assigned certain accounts to his second wife to secure the payment of money advanced.

*Appeal from Linn District Court.*—HON. WILLIAM G. THOMPSON, Judge.

WEDNESDAY, FEBRUARY 2, 1898.

HELEN FARRAR began an action for divorce against her husband, T. S. Farrar, December 28, 1894, and decree was entered as prayed, February 5, 1895, allowing her one thousand dollars as alimony. Thereafter the plaintiff moved the court for an order on her attorney, requiring him to pay over such amount, which she alleged he had collected. The attorney was directed to pay into court, within thirty days, the sum of five hundred and eighty-eight dollars, with interest at six per cent. per annum from February 5, 1895. Both

parties appeal, that of the attorney being perfected
first.—*Modified.*

*Smith & Son* and *Lewis Heins* for appellant Stuart.

*Preston, Wheeler & Moffit* for defendant appellee.

LADD, J.—The decree of divorce, allowing one thou-
sand dollars as alimony, was entered February 5, 1895,
and on the same day the defendant married Martha
Foss. After this marriage, a draft of one thousand dol-
lars, in favor of the latter, was delivered to her by the
Cedar Rapids Savings Bank, in pursuance of instruc-
tions so to do upon the happening of that event. This
she at once indorsed and delivered to Stuart, who paid
the plaintiff two hundred and fifty dollars. This motion
seeks to compel him to pay the balance into court for
her use and benefit.

I. Farrar first contemplated obtaining a divorce,
but, being advised no just cause existed, induced his
wife to begin proceedings. They called at Stuart's office
together, and, in his words, "it was then agreed that
she would bring the action, and he talked about turning
over a certain one thousand dollars. That was the talk,
and was the talk for some time, in connection with this
certain one thousand dollars, which was the interest of
a certain Miss Martha Foss, with whom Dr. Farrar was
then intimate, and who was subsequently to be his wife.
That certain one thousand dollars was spoken of, but
at no time was it talked that it should be the identical
one thousand dollars. That thousand was mentioned to
induce Mrs. Farrar,—to show her that there was some-
thing,—that there was a one thousand dollars to get
somehow; that there could be a one thousand dollars
put in the pot. She then began proceedings." The
plaintiff, up to the time of divorce, was led to believe,
not only that she would be allowed, but would receive

one thousand dollars alimony. At that time Stuart paid her two hundred and fifty dollars only, and advised her that the remainder was in notes not due, deposited at the bank. She was not informed of the receipt of the money. Prior to this, he had made one trip to Iowa county with Farrar, and another with Miss Foss, to induce the latter's brother to pay a note of one thousand dollars, owing her, before maturity, and to assure him of Farrar's good faith in proposing marriage in event a divorce were procured. While doing this, at the instance of Farrar, it was with the understanding that the money to be obtained was for the payment of alimony to the plaintiff. The brother was informed of the purpose for which it was being obtained, and caused it to be sent, as heretofore stated. The draft was in favor of Martha Foss, and was indorsed by her, and delivered to Stuart for the purpose of paying the judgment, in pursuance of an understanding had by her with Stuart and Farrar. If Stuart and Farrar had a different arrangement, it was not made known to Martha Foss, nor to the plaintiff. Certain it is, that Foss had the right to have the money applied as she wished. It is said that, as Farrar assigned certain accounts to Miss Foss to secure the payment of this money, he became the owner thereof, and entitled to direct its disbursement. But the money was procured for a specific purpose, and the security given to indemnify, in the event of the payment of the defendant's obligation. This Stuart fully understood, and that it was not to be paid to Farrar, but to the plaintiff. Farrar never acquired any interest in it, save that of having it applied on the judgment. Stuart's action in going to Iowa county, and assisting in procuring the money, cannot be justified on any other ground than that of obtaining for his client, the plaintiff, the amount to be allowed her. On any other hypothesis, he was simply conniving in the

arrangement for a marriage of a party before any lawful right existed for making such an arrangement. Though employed by the defendant, he appeared in the action for the plaintiff, and was bound to act with perfect fidelity in the care and protection of all her interests pertaining to the suit. The testimony of Reed and Gale shows that, even after receiving the draft, he understood it to be for the appellee. If he entered into any secret arrangement with Farrar to divert this money from the purpose for which it was paid, this did not affect the right of Foss to have the money applied as agreed, or of the plaintiff to have it appropriated for the purpose intended by Foss. It is incredible that the attorney, after arranging for the payment and assuring his client that it would be paid, and after indicating to the brother its purpose, and understanding the application Foss desired, should yet enter into an agreement for the appropriation of the money, when received, for the benefit of one to whom he owed no duty, legal or moral. If true, however, it conferred upon him no authority to pay Farrar or his creditors any portion of the money received for the appellee, and he must restore to her that which fidelity and the dic tates of common honesty require.

II. The district court allowed the attorney the costs paid, twelve dollars, one hundred dollars paid to Farrar, and fifty dollars for services rendered in procuring the decree of divorce. As the plaintiff was liable for the costs, these were properly credited. Stuart, however, made no claim that the plaintiff was indebted to him for attorney's fees. On the contrary, he says, "it was expressly understood I should not charge her a cent." This being true, he ought not to have been allowed anything therefor. As already stated, he was not authorized to pay Farrar the one hundred dollars, or any of his debts. We think he ought to have been

required to pay into the court seven hundred and sixty-three dollars, with interest at six per cent. from February 5, 1895, instead of the amount fixed by the district court; and the cause will be remanded, with instructions to modify its order accordingly.—AFFIRMED on Stuart's appeal.   REVERSED on plaintiff's appeal.